CR# 04-1684-CBS

## AFFIDAVIT OF SPECIAL AGENT RANDY R. REEVES

I, Randy R. Reeves, having been duly sworn, do hereby depose and state as follows:

1. I am a Special Agent with the United States Bureau of Immigration and Customs Enforcement ("ICE"), formerly the United States Immigration and Naturalization Service ("INS"), and have been so employed since January 1987. Among other duties, I am assigned to investigate the manufacture and sale of fraudulent Immigration and Naturalization Resident Alien cards, Form I-551 (hereinafter "green cards"). From my training, I know that persons, usually aliens, manufacture and distribute counterfeit resident alien cards, social security account number cards (hereinafter "SSANC" or "SSANCs") and other false documentation. The counterfeit documents are then sold to aliens who are illegally in the United States or who do not have permission to work in the United States. I am familiar with the various criminal statutes pertaining to the enforcement of immigration laws and which make it unlawful to manufacture and sell green cards, including 18 U.S.C. §1546(a)(immigration document fraud); 18 U.S.C. §1028(a)(1)-(6)(producing, possessing and transferring identification and false identification documents); and 18 U.S.C. §1426(b)(using and selling false naturalization, citizenship and registry documents).

2. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and agents of this service, as well as information provided to me by a Confidential Witness ("CW"). This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have learned during this investigation, but is submitted in support of an application for a criminal complaint charging **Joaquim Vergilio BARBOSA-NETO** with a violation of 18 U.S.C. §1028(a)(2) (knowingly transferring false identification documents).

**BACKGROUND**

3. In April of 2003, I received information from a Confidential Witness MIR#00760 (hereafter referred to as "CW-1") who indicated that a Brazilian male known only as JOAQUIM was manufacturing fraudulent "green cards" and social security account number cards. CW-1 further related that JOAQUIN was residing and operating in the Lowell, Massachusetts's area. Telephone numbers 978-828-4701(cell) and 978-209-1546(beeper) were provided as a way to reach JOAQUIM.

4. On April 29, 2003, CW-1 placed an unrecorded telephone call to JOAQUIM's cellular phone 978-828-4701. JOAQUIM said that he could provide CW-1 with a set, consisting of one green card

and one social security card for $150.00. JOAQUIM confirmed that he lived in the Lowell, Massachusetts area. CW-1 described JOAQUIM as a Brazilian male between the ages of thirty-eight and forty-two.

**DOCUMENT PURCHASES**

*FIRST PURCHASE*

5. On May 12, 2003, CW-1 placed a consensually monitored and recorded telephone call to JOAQUIM at 978-828-4701 to arrange a meeting for the purpose of purchasing one set[1] of fraudulent documents. According to CW-1, JOAQUIM agreed to sell the CI one green card and one social security card. As a result of the call, a meeting was scheduled for May 13, 2003 in the parking lot of the Outback Steakhouse in Lowell, Massachusetts.

6. On May 13, 2003, at approximately 8:00 a.m., ICE agents met with CW-1 in Lowell to prepare for the scheduled meeting with JOAQUIM. Prior to the meeting, an integrity search of CW-1 and CW-1's vehicle was performed by ICE agents. In addition, I provided CW-1 with the green card-style photograph, which was to be given to JOAQUIM and used for the creation of the document. CW-1 was provided with $150.00 in official U.S. funds. CW-1 was also provided with the fictitious name and date of birth

---

[1] A set consists of one "green card" and one social security account number card for one individual.

for the creation of the document. Lastly, an electronic transmitter and recorder were placed on CW-1 to monitor and record the meeting.

7. At approximately 8:06 a.m., at my request, CW-1 placed a consensually monitored and recorded telephone call to JOAQUIM at (978) 828-4701. According to CW-1, JOAQUIM told CW-1 to call him from the Outback Steakhouse parking lot in Lowell.

8. At approximately 8:40 a.m., CW-1 was observed arriving at and parking in front of the Outback Steakhouse. CW-1 was escorted to the meet location by me.

9. At approximately 9:10 a.m., JOAQUIM was observed arriving in the Outback Steakhouse parking lot driving a green Ford Escort station wagon, bearing Massachusetts Registration 3352 XD. JOAQUIM proceeded directly to CW-1's vehicle and parked next to CW-1. CW-1 entered JOAQUIM's vehicle and engaged in conversation. During the meeting, CW-1 handed JOAQUIM the green card-style photograph and provided the fictitious name and date of birth. The meeting then ended at approximately 9:18 a.m., with CW-1 and JOAQUIM departing the area.

10. At approximately 10:36 a.m., CW-1 placed a consensually monitored and recorded telephone call to JOAQUIM. According to CW-1, JOAQUIM stated that he would meet CW-1 at the same location in several minutes. ICE agents performed an integrity search of

4

CW-1 and CW-1's vehicle.

11. At approximately 11:01 a.m., JOAQUIM was observed arriving in the Outback Steakhouse parking lot driving the aforementioned vehicle. JOAQUIM proceeded directly to CW-1's vehicle and parked next to CW-1. CW-1 entered JOAQUIM's vehicle and engaged in conversation. During the meeting the CW-1 handed JOAQUIM the $150.00 fee for the documents. According to CW-1, JOAQUIM stated that the fee would be only $130.00. In exchange, JOAQUIM handed the CW-1 the completed documents. CW-1 asked JOAQUIM about bringing additional orders in the future. According to CW-1, JOAQUIM agreed to accommodate the CW-1's future document orders, and the meeting ended at 11:09 a.m. Both JOAQUIM and CW-1 departed the area.

12. Immediately following the meeting, ICE agents met with CW-1 for debriefing and to take custody of the documents. The name on the documents purchased from JOAQUIM is Alexandre Costa Souza. Further examination of the documents also revealed that the photograph which appeared on the fraudulent green card, was the same photograph I previously provided to CW-1.

13. Based upon information gathered during the undercover operation, target JOAQUIM has been identified as BARBOSA-NETO, Joaquim Vergilio. He is a citizen of Brazil born on September

19, 1961. BARBOSA last entered the United States on June 13, 1999 as a visitor for pleasure and was authorized to remain until September 12, 1999. To date, there is no record of JOAQUIM's departure.

**SECOND PURCHASE**

14. On July 10, 2003 the CW-1 placed a consensually monitored and recorded telephone call to JOAQUIM at 978-828-4701 to arrange a meeting for the purpose of purchasing two sets of fraudulent documents. According to the CW-1, JOAQUIM agreed to meet and sell the CW-1 two green cards and two social security cards. As a result of the call, a meeting was scheduled for July 11, 2003 in Lowell, Massachusetts.

15. On July 11, 2003, at approximately 8:00 a.m., ICE agents met with CW-1 in Lowell, MA to prepare for the scheduled meeting with JOAQUIM. Prior to the meeting, an integrity search of CW-1 and CW-1's vehicle was performed by ICE agents. In addition, your affiant provided CW-1 with two green card style photographs, which were to be given to JOAQUIM and used in the creation of the documents. The CW-1 was provided with $260.00 U.S. official funds. CW-1 was provided with the fictitious names and dates of birth for the creation of the documents. Lastly, an

6

electronic transmitter and recorder were placed on CW-1 to monitor and record the meeting.

16. At approximately 8:18 a.m. at the request of your affiant, the CW-1 placed a consensually monitored and recorded telephone call to JOAQUIM at (978) 828-4701. CW-1 related to JOAQUIM that he was enroute to Lowell, MA. CW-1 told the JOAQUIM that he would meet him at the Outback Steakhouse parking lot.

17. At approximately 8:49 a.m., CW-1 was observed arriving at and parking in front of the Outback Steakhouse. CW-1 was escorted to the meet location by your affiant.

18. At approximately 8:58 a.m., JOAQUIM was observed arriving in the Outback Steakhouse parking lot driving the green Ford Escort Station Wagon, bearing Massachusetts Registration 3352 XD. JOAQUIM proceeded directly to CW-1's vehicle and parked next to CW-1. CW-1 entered JOAQUIM's vehicle and engaged in conversation. During the meeting, CW-1 handed JOAQUIM the green card style photographs along with the fictitious names and dates of birth. According to CW-1, JOAQUIM stated that the documents would be ready in one and a half hours. The meeting was then terminated at approximately 9:13 a.m., with CW-1 and JOAQUIM departing the area.

19. At approximately 10:36 a.m., JOAQUIM was observed arriving in the Outback Steakhouse parking lot driving the aforementioned vehicle. JOAQUIM proceeded directly to CW-1's vehicle and parked next to CW-1. CW-1 entered JOAQUIM's vehicle and engaged in conversation. During the meeting CW-1 handed JOAQUIM the $260.00 fee for the documents. In exchange, JOAQUIM handed CW-1 the two sets of documents. The meeting terminated at approximately 10:37 a.m. JOAQUIM and CW-1 departed the area.

20. Immediately following the meeting, ICE agents met with CW-1 for debriefing, and to take custody of the documents. The names on the documents purchased from JOAQUIM were Priscilla Gomes Santos and Luane Manderley. Further examination of the documents also revealed that the photographs which appeared on the fraudulent green cards were the same photos your affiant provided to CW-1 earlier.

**THIRD PURCHASE**

21. On July 28, 2003 your affiant showed CW-1 a photograph from Nonimmigrant Visa #19990711140001 received from the Department of State. CW-1 positively identified the individual in the photograph as JOAQUIM.

22. Also on July 28, 2003, CW-1 placed a consensually monitored and recorded telephone call to JOAQUIM at 978-828-4701

to arrange a meeting to purchase three sets of fraudulent documents. According to CW-1, JOAQUIM agreed to meet and sell CW-1 three green cards and three social security cards. As a result of the call, a meeting was scheduled for July 30, 2003 in Lowell, Massachusetts. The call was then terminated.

23. On July 30, 2003 at approximately 8:30 a.m., ICE agents met with CW-1 in Lowell, MA to prepare for the scheduled meeting with JOAQUIM. Prior to the meeting, an integrity search of CW-1 and CW-1's vehicle was performed by ICE agents. In addition, your affiant provided CW-1 with three green card style photographs, which were to be given to JOAQUIM and used in the creation of the documents. CW-1 was provided with $390.00 U.S. official funds. CW-1 was also provided with the fictitious names and dates of birth for the creation of the documents. Lastly, an electronic transmitter and recorder were placed on the CW-1 to monitor and record the meeting.

24. At approximately 10:00 a.m., at the request of your affiant, the CW-1 placed a consensually monitored and recorded telephone call to JOAQUIM at (978) 828-4701. JOAQUIM agreed to meet with CW-1 at JOAQUIM's place of business at 491 Lawrence Street Lowell in fifteen minutes.

25. At approximately 10:09 a.m., CW-1 was observed arriving at and parking in front of JOAQUIM's business. CW-1 was escorted

to the meet location by your affiant.

26. At approximately 10:35 a.m., JOAQUIM was observed arriving at his place of business driving the green Ford Escort Station Wagon, bearing Massachusetts Registration 3352 XD. JOAQUIM and CW-1 engaged in conversation on the side of the street, then walked into the business together. During the meeting, CW-1 handed JOAQUIM the green card style photographs along with the fictitious names and dates of birth. At approximately 11:15 a.m., CW-1 exited JOAQUIM's place of business and departed the area. According to CW-1, JOAQUIM stated that the documents would not be ready until 2:00 p.m.

27. At approximately 1:35 p.m., CW-1 was observed arriving at and parking in front of JOAQUIM's business. CW-1 was escorted to the meet location by your affiant.

28. At approximately 2:23 p.m., JOAQUIM arrived at his place of business driving the aforementioned vehicle. JOAQUIM and CW-1 met inside of the business and engaged in conversation. During the meeting CW-1 handed JOAQUIM the $390.00 fee for the documents. In exchange, JOAQUIM handed CW-1 the three sets of documents. The meeting terminated at approximately 2:30 p.m. CW-1 departed the area.

29. Immediately following the meeting, ICE agents met with CW-1 for debriefing and to take custody of the documents. The names on the documents purchased from JOAQUIM were Joao Marcos Pereira, Ana Maria Silva and Carlos Demelo. Further examination of the documents also revealed that the photographs which appeared on the fraudulent green cards were the same photographs your affiant provided to CW-1 earlier.

**FOURTH PURCHASE**

30. On August 21, 2003, CW-1 placed a consensually monitored and recorded telephone call to JOAQUIM at 978-828-4701 to arrange a meeting to purchase two sets of fraudulent documents. According to CW-1, JOAQUIM agreed to meet and sell CW-1 two green cards and two social security cards. As a result of the call, a meeting was scheduled for August 22, 2003 in Lowell, Massachusetts. The call was then terminated

31. On August 22, 2003, ICE agents met with the CW-1 in Lowell, MA to prepare for the scheduled meeting with JOAQUIM. Prior to the meeting, an integrity search of CW-1 and CW-1's vehicle was performed by ICE agents. In addition, your affiant provided the CW-1 with two green card style photographs, which were to be given to JOAQUIM and used in the creation of the documents. CW-1 was provided with $260.00 U.S. official funds.

29. Immediately following the meeting, ICE agents met with CW-1 for debriefing and to take custody of the documents. The names on the documents purchased from JOAQUIM were Joao Marcos Pereira, Ana Maria Silva and Carlos Demelo. Further examination of the documents also revealed that the photographs which appeared on the fraudulent green cards were the same photographs your affiant provided to CW-1 earlier.

**FOURTH PURCHASE**

30. On August 21, 2003, CW-1 placed a consensually monitored and recorded telephone call to JOAQUIM at 978-828-4701 to arrange a meeting to purchase two sets of fraudulent documents. According to CW-1, JOAQUIM agreed to meet and sell CW-1 two green cards and two social security cards. As a result of the call, a meeting was scheduled for August 22, 2003 in Lowell, Massachusetts. The call was then terminated

31. On August 22, 2003, ICE agents met with the CW-1 in Lowell, MA to prepare for the scheduled meeting with JOAQUIM. Prior to the meeting, an integrity search of CW-1 and CW-1's vehicle was performed by ICE agents. In addition, your affiant provided the CW-1 with two green card style photographs, which were to be given to JOAQUIM and used in the creation of the documents. CW-1 was provided with $260.00 U.S. official funds.

11

CW-1 was also provided with the fictitious names and dates of birth for the creation of the documents. Lastly, an electronic transmitter and recorder were placed on CW-1 to monitor and record the meeting.

32. At approximately 10:04 a.m., CW-1 was observed arriving at and parking in front of JOAQUIM's business. CW-1 was escorted to the meet location by your affiant

33. At approximately 10:24 a.m., JOAQUIM was observed arriving at his place of business. JOAQUIM and CW-1 engaged in conversation on the side of the street. According to CW-1, JOAQUIM instructed CW-1 to follow him to another meet location. JOAQUIM exited the area driving a blue 1995 Windstar minivan bearing Massachusetts registration 41AA17. CW-1 followed JOAQUIM in CW-1's vehicle. JOAQUIM and CW-1 traveled to Tom's Car Wash in Lowell, MA. JOAQUIM and CW-1 engaged in conversation and during the meeting, CW-1 handed JOAQUIM the green card style photographs along with the fictitious names and dates of birth. According to CW-1, JOAQUIM also stated that he needed the money as well. CW-1 handed JOAQUIM the $260.00 fee for the documents. JOAQUIM related that the documents would not be ready until 6:00 p.m. Arrangements were made to pick up the documents on another day.

34. On August 25, 2003, CW-1 placed a consensually monitored and recorded telephone call to JOAQUIM at 978-828-4701 to arrange a meeting to pick up the previously purchased two sets of fraudulent documents. As a result of the call, a meeting was scheduled for August 26, 2003 in Lowell, Massachusetts.

35. On August 26, 2003, ICE agents met with CW-1 in Lowell, MA to prepare for the scheduled meeting with JOAQUIM. Prior to the meeting, an integrity search of CW-1 and CW-1's vehicle was performed by ICE agents.

36. At approximately 9:45 am, at the request of your affiant, the CW-1 placed a consensually monitored and recorded telephone call to JOAQUIM at (978) 828-4701. The CW-1 related to JOAQUIM to meet at the Outback Steakhouse parking lot.

37. At approximately 10:00 a.m., CW-1 was observed arriving at and parking in front of the Outback Steakhouse. CW-1 was escorted to the meet location by your affiant.

38. At approximately 10:12 a.m., JOAQUIM was observed arriving in the Outback Steakhouse parking lot driving the green Ford Escort Station Wagon, bearing Massachusetts Registration 3352 XD. JOAQUIM proceeded directly to CW-1's vehicle and parked next to CW-1. CW-1 entered JOAQUIM's vehicle and during the

meeting, JOAQUIM handed the CW-1 two sets of documents. The meeting terminated at approximately 10:25 a.m.

39. Immediately following the meeting, ICE agents met with CW-1 for debriefing, and to take custody of the documents. The names on the documents purchased from JOAQUIM were Jose Vierra and Elaine Souza. Further examination of the documents also revealed that the photographs which appeared on the fraudulent green cards, were the same photographs your affiant provided to CW-1 earlier.

40. In sum, I have received a total of sixteen (16) documents from the abovementioned purchases. I have reviewed the documents and have determined that each are, in fact, counterfeit identification documents. A review of records of the ICE and the Social Security Administration reveals that the green card and SSANC numbers are either invalid, or belong to an individual other than the person listed on the documents.

## CONCLUSION

Based on the foregoing information, I believe probable cause exists to conclude that **Joaquim Vegilio BARBOSA-NETO**, on May 13, 2003; July 11, 2003; July 30, 2003; and on August 26, 2003, did knowingly, and without lawful authority transfer false

identification documents, in violation of Title 18, United States Code, Section 1028(a)(2).

                                                Randy R. Reeves
                                                Special Agent
                                                United States Bureau of Immigration and Customs Enforcement

Subscribed and sworn before me this
26th day of February, 2004

CHARLES B. SWARTWOOD, III
UNITED STATES MAGISTRATE JUDGE

15

%JS 45 (5/97) - (Revised USAO MA 1/15/04)

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |

**Place of Offense:** _____  **Category No.** II  **Investigating Agency** ICE/SSA

**City** Lowell   **Related Case Information:**

**County** Middlesex

Superseding Ind./ Inf. _____   Case No. _____
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name  JOAQUIM BARBOSA-NETO   Juvenile [ ] Yes  [x] No

Alias Name  JOAQUIM

Address  196 Stackpole Street, Apt. 6, Lowell

Birth date (Year only): 1961   SSN (last 4 #): ____   Sex M   Race: H   Nationality: Brazil

Defense Counsel if known: _____   Address: _____

Bar Number: _____

**U.S. Attorney Information:**

AUSA  Nadine Pellegrini   Bar Number if applicable  545606

Interpreter:  [x] Yes  [ ] No   List language and/or dialect:  Portuguese

Matter to be SEALED:  [ ] Yes  [x] No

[x] Warrant Requested   [ ] Regular Process   [ ] In Custody

**Location Status:**

**Arrest Date:** _____

[ ] Already in Federal Custody as _____ in _____
[ ] Already in State Custody _____   [ ] Serving Sentence   [ ] Awaiting Trial
[ ] On Pretrial Release:   Ordered by _____ on _____

**Charging Document:**  [ ] Complaint   [ ] Information   [ ] Indictment

**Total # of Counts:**  [ ] Petty   [ ] Misdemeanor   [x] Felony  1

Continue on Page 2 for Entry of U.S.C. Citations

[x]   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date:  2/26/04   Signature of AUSA:  *[signature]*

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant** _____

U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 USC 1028(a)(2) | Transfer of Fraudulent Identification | _____ |
| Set 2  _____ | _____ | _____ |
| Set 3  _____ | _____ | _____ |
| Set 4  _____ | _____ | _____ |
| Set 5  _____ | _____ | _____ |
| Set 6  _____ | _____ | _____ |
| Set 7  _____ | _____ | _____ |
| Set 8  _____ | _____ | _____ |
| Set 9  _____ | _____ | _____ |
| Set 10 _____ | _____ | _____ |
| Set 11 _____ | _____ | _____ |
| Set 12 _____ | _____ | _____ |
| Set 13 _____ | _____ | _____ |
| Set 14 _____ | _____ | _____ |
| Set 15 _____ | _____ | _____ |

**ADDITIONAL INFORMATION:** _____

_____

JS-45.wpd - 1/15/04 (USAO-MA)